852 So.2d 863 (2003)
The STATE of Florida, Appellant,
v.
Kear Santwone WALKER, Appellee.
No. 3D02-2958.
District Court of Appeal of Florida, Third District.
June 11, 2003.
Order Denying Rehearing August 27, 2003.
Charles J. Crist, Jr., Attorney General, and Jill K. Traina, Assistant Attorney General, for appellant.
Howard Sohn, Miami, for appellee.
Before LEVY, FLETCHER, and SHEVIN, JJ.
LEVY, Judge.
The State of Florida appeals from a trial court order which granted the Defendant's Motion to Suppress Statements, Admissions and/or Confessions. We reverse.
The instant case concerns the application of a notification requirement in Miami-Dade County's Addendum to Joint Declaration to Mutual Agreement ("the Agreement"). The Agreement provides that it is to the mutual benefit of the municipal police agencies who are signatories to the Agreement to exercise concurrent jurisdiction over certain situations because "officers, while in another jurisdiction, are often present at events where immediate action is necessary, or are able to expeditiously conclude an investigation by identifying and arresting an offender." One of the situations under which concurrent jurisdiction is permissible is for arrests made pursuant to the laws of arrest, of individuals identified as a result of investigations of a felony when that felony occurred in the municipality which employs the arresting municipal police officer. The Agreement provides that an officer who seeks to take any enforcement action in a jurisdiction other than the jurisdiction in which she is employed is required to notify the jurisdiction in which the enforcement action will be taken before commencing that action unless exigent circumstances prevent prior notification. If exigent circumstances prevent *864 prior notification, then notification is required to be made as soon after the action as possible. The Agreement does not define the term "exigent circumstances". The City of Miami Police Department and the City of Opa Locka Police Department are two of the signatories to the Agreement.
In the instant case, the pursuit of the Defendant attracted extensive attention after the warrant was obtained on April 27, 2000. At approximately 10:00 a.m. on May 2, 2000, after attempts to locate the Defendant were unsuccessful, the City of Miami issued a press release to the local television stations and the local newspapers for the purpose of soliciting information from the public regarding the Defendant's whereabouts. That afternoon, the local television stations aired stories regarding the search for the Defendant. On the following day, May 3, 2000, the Miami Herald ran a story which stated that the police were searching for the Defendant, and that a reward was being offered for information which led to the Defendant's capture.
At approximately 2:00 p.m. on May 3, 2000, a City of Miami police officer received information regarding the whereabouts of the Defendant. Based upon this information, a team of four officers was convened for the purposes of apprehending the Defendant. The team of officers traveled to an apartment in the Liberty City area, arriving at approximately 2:30 p.m., but the Defendant was not present at that apartment upon the officers' arrival. Five minutes later, and prior to their departure from the apartment, the officers received information from Crimestoppers that the Defendant was present at the home of his girlfriend in the City of Opa Locka. The team of officers then traveled to the house in the City of Opa Locka, arrived at 2:50 p.m., and apprehended the Defendant. According to the testimony presented at the suppression hearing, the City of Miami Police Department notified the Opa Locka Police Department of the presence of its officers after it arrested the Defendant. The testimony at the suppression hearing further established that the City of Miami officers did not activate any emergency equipment (i.e., sirens) while they traveled to the Opa Locka location, and, while traveling to the Opa Locka location, the officers did not contact the Opa Locka Police Department using cell phones or police radios.
On May 24, 2000, the Defendant was charged by indictment with one count of First Degree Murder for the December 25, 1998 death of Mark Couch. On October 4, 2002, the Defendant filed a Motion to Suppress Statements, Admissions and/or Confessions, contending that the statements obtained by the police from the Defendant followed his illegal arrest, detention and/or seizure by law enforcement agents. The trial court granted the motion, concluding that the Defendant was illegally arrested because the State failed to prove that there were exigent circumstances which permitted the City of Miami police officers to arrest the Defendant in the City of Opa Locka.
The State contends that, based on the foregoing facts, exigent circumstances prevented the City of Miami police officers from notifying the City of Opa Locka Police Department, thereby permitting the City of Miami police officers to notify the City of Opa Locka Police Department after the Defendant's arrest. We agree. According to the Standard Operating Procedure in the Addendum to Joint Declaration to Mutual Aid Agreement, "[p]rior to taking any enforcement action the officer shall notify the designated officer of the jurisdiction in which the action will be taken, unless exigent circumstances prevent *865 such prior notification, in which case notification shall be made as soon after the action as possible." (emphasis added) On the date of the Defendant's arrest, the police were continuously receiving tips concerning the location of the Defendant and, therefore, were required to investigate each tip in an expeditious manner in order to prevent the Defendant from fleeing the area. Furthermore, given the attention that the media focused on the search for the Defendant on the day before and the day of his arrest, the use of police radios and/or cell phones to notify the City of Opa Locka Police Department of the action prior to the Defendant's capture would have undoubtedly (1) attracted unwanted attention to the pursuit and (2) compromised any element of surprise necessary for the City of Miami officers to effectuate the arrest. Therefore, consistent with the above described section in the Agreement, exigent circumstances[1] existed under which notification to the City of Opa Locka Police Department could be made after the arrest was effectuated. Accordingly, the order granting the Defendant's motion to suppress is quashed and this case is remanded to the trial court for further proceedings.
Reversed.

ON MOTION FOR REHEARING DENIED
FLETCHER, Judge.
Although we deny the petition for rehearing, we would add the following to our reasoning:
The mutual agreement addendum was entered into for the mutual benefit of the signatories thereto, not for the benefit of defendants. If a signatory breaches the agreement, an affected signatory has standing to complain. Thus if the City of Opa Locka had concluded that there were no exigent circumstances it had available to it the ability to withdraw from the agreement or to take action to forestall any future violation of the same nature. The defendant, however, is not a party to the agreement. As the agreement contains no language making the defendant a third party beneficiary, the defendant has no standing to challenge any ostensible breach of the agreement. For this additional reason rehearing is appropriately denied.
NOTES
[1] While the term "exigent circumstances" is not defined in the Agreement, it is clear that an "exigent circumstance," for the purposes of the Agreement, would be a situation where notification prior to the enforcement action would prevent the police from obtaining the benefits of the agreementto wit, having the ability to expeditiously conclude an investigation by identifying and arresting an offender.